ZAYED, Appellee,

v.

ZAYED, Appellant.

[Cite as *Zayed v. Zayed* (1995), 100 Ohio App.3d 410.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66795.

Decided Jan. 25, 1995.

*Todd T. Armanini*, for appellee.

*Jack N. Turoff*, for appellant.

JAMES D. SWEENEY, Presiding Judge.

Defendant-appellant-husband Mahmoud Zayed appeals from the order of the trial court which overruled his objections to the referee's report and affirmed same relative to the denial of husband's motion to modify child support and the plaintiff-appellee-wife Fatima Zayed's motions to show cause regarding an arrearage of child support, which was granted and denied in part, and to determine division of marital property (from the sale of a grocery store), which was granted. For the reasons adduced below, we affirm in part and reverse and remand in part.

A review of the record on appeal indicates that the parties were married in mid–1983 and divorced on May 18, 1989. The wife was awarded custody of the minor child of the parties and the husband was ordered to pay $100 per week plus poundage as child support. On May 1, 1991, the parties executed an agreed judgment entry, which recognized that the husband was in arrears on child support in the amount of $3,559.84 as of November 7, 1990. Child support was suspended pending the resolution of the child support motions mentioned above and which are the subject of this appeal.

The record on appeal, which includes a copy of the transcript from the hearing before Referee Frost, further indicates that the referee conducted a two-day hearing on the above-mentioned motions beginning on June 8, 1992 and concluding on June 17, 1992. At this hearing, the wife offered the testimony of three witnesses and the husband offered the testimony of two witnesses. The first witness for the wife was the husband, called as if on cross-examination, who stated in pertinent part as follows: (1) he lives with his new wife and family in the upstairs portion of a two-family home on Bunts Road, which is owned by his new wife and his brother; (2) at the time of the divorce he owned a small grocery store on East 117th Street in Cleveland, Ohio; (3) the court had reserved jurisdiction over the division of the equity in the store; (4) subsequent to the divorce he sold the store in 1990 to Elias Tayeh; (5) the witness had purchased the store for $22,000; (6) his father owns two small grocery stores; (7) he presently works as a cook in one of his father's stores, having started work about two months before the hearing; (8) he was convicted in 1989 of trafficking in food stamps at his grocery store on East 117th Street, which conviction prohibits him from selling or dealing in food stamps; (9) the store sold for $35,000, and no other monies apart from the sales price was included in the deal; (10) although he earned interest on two bank accounts in 1989, his federal tax return for 1989 does not contain any interest as income; (11) he earns about $600 per month as a cook, and does not pay any taxes on that money; (12) he cannot work in a grocery business which deals in food stamps due to the trafficking conviction; (13) he never told anyone that he was hiding funds from his ex-wife; (14) his new wife is a nineteen-year-old homemaker who immigrated to the United States in 1989 at the age of sixteen; (15) in buying the house, the new wife had $20,000 in an account at Ameritrust Bank, which she brought with her from the Middle East, which was used as a down payment; (16) he did not give his new wife the $20,000; (17) his brother, the co-owner of the house, had $100,000 in an account at the time of buying the house; (18) ten people live in the upstairs portion of the house, which includes the attic space; (19) his brother lives with him; (20) the first floor of the house is rented; (21) he has no foreign assets; (22) he owns a 1985 Chevrolet 4 × 4 Blazer.

The second witness was the plaintiff, Fatima Zayed, who testified in pertinent part as follows: (1) she is employed and earns approximately $30,000 per year from the Western Reserve Area Agency on Aging; (2) defendant had told her that the grocery store on East 117th Street was valued at $150,000; (3) she does not know what the store sold for and has received no monies from that sale; (4) since November 1990, she has received approximately $400 in child support; (5) the defendant told her during child visitation periods that he is self-employed and owns a store in Akron and one in Garfield Heights, with the titles to these stores in his father's and brother's names because he did not want her to get the money; (6) the defendant told her that he owns several automobiles, namely, a Chevrolet Blazer, an older white Lincoln Continental, and a small red car; (7) the defendant has told her that his net worth is approximately $500,000 and that she would not get a penny of it because it was all hidden; (8) during the marriage, at any given time, there was approximately $60,000 in cash at the house; (9) during the marriage, the defendant would take home approximately $4,000–5,000 per week from the store on East 117th Street; (10) the defendant often flaunts large sums of cash before her; (11) the defendant told her that he had hidden income in foreign assets and investments in Israel and Sweden, which were performing well; (12) the defendant travels to Israel twice a year to check on his home he is building there for his family for approximately $250,000 (U.S.); (13) it is her opinion that although the loan application document for the defendant's present house on Bunts Road is signed by the new wife and brother, the handwriting of those signatures is the defendant's; (14) signature cards at several banks contain the signatures of the new wife and the brother, but the handwriting of those signatures is the defendant's; (15) the mortgage deed for the Bunts Road house contained the signatures of the defendant, the new wife, and the brother, but each of the signatures is the defendant's; (16) she also earns money as a consultant for the Benjamin Rose Institute, conducting interviews for $36 each maybe once per week, having started in March 1992; (17) she was awarded a master's degree in management in May 1992; (18) the store on East 117th Street was purchased outright by the parties during the term of the marriage for $35,000, the purchase including the liquor license.

The third witness for the plaintiff was George Penfield, who testified in pertinent part as follows: (1) he is an attorney; (2) Tayeh, a client of the witness, bought the East 117th Street grocery store from the defendant; (3) at the request of the buyer and the seller, the witness drafted the purchase agreement with a written purchase price of $35,000, although the real purchase price was $100,000, as evidenced and memorialized by a contemporaneous note the witness wrote to himself (Plaintiff's Exhibit 15); (4) the seller/defendant expressed a desire to keep his spouse unaware of the true purchase price because of the

pending divorce; (5) an unspecified amount of cash, apart from the $35,000 purchase price, changed hands at his office between the buyer and seller.

The defendant then offered the testimony of two witnesses. The first witness for the defendant was Elias Tayeh, who stated in pertinent part the following: (1) he purchased the East 117th Street store from the defendant for $35,000, which was paid with a cashier's check; (2) no monies above the stated purchase price of $35,000 changed hands at Penfield's office; (3) subsequent to the purchase of the store, the witness observed the defendant on several occasions at a local wholesale grocery market, implying that the defendant was purchasing supplies for a store which he claimed not to have an interest in.

The defendant then testified on his own behalf in pertinent part as follows: (1) he has two cars registered in his name, but one of them belongs to his brother; (2) he never told the plaintiff that the East 117th Street store was worth $150,000, but it did sell for $35,000; (3) he does not own any businesses or real estate in the United States or elsewhere; (4) he could not recall the largest amount of money he would have at his home when he owned the market on East 117th Street; (5) he never had large sums of cash at home; (6) he never displayed large sums of cash in front of the plaintiff after the divorce; (7) he has never invested money in foreign accounts; (8) he has never signed any documents in the name(s) of other persons; (9) his brother loaned the witness $10,000 of the purchase price of the store when the witness purchased it in 1987, which sum was protected with a promissory note which bore no interest; (10) he still owes his brother $3,000, having paid him $7,000 on September 30, 1990, some seven months after the store was sold to Tayeh and the sale proceeds distributed; (11) he does not know why his brother, who was married, and the witness's present wife co-purchased the home the witness and his family live in; (12) he sold the store voluntarily.

On July 7, 1993, the referee issued his seven-page report. As part of this report, the referee recommended that:

"(1) plaintiff's motion to determine division of marital property be granted, placing a net value of $83,326.48 on the sale of the East 117th Street store and awarding each party one-half interest [$41,663.24] therein;

"(2) defendant's motion to modify child support be denied; and,

"(3) plaintiff's motion to show cause be granted in part and denied in part, finding that defendant's total child support arrearage as of June 8, 1992 is $5,559.84 and that liquidation of the arrearage be deferred until further order of court."

Thereafter, defendant filed objections to the referee's report. On January 21, 1993, the trial court overruled the defendant's objections and approved the

recommendations of the referee. This appeal followed, presenting seven assignments of error.

## I

"The trial court prohibited the completion of the trial record by refusing to permit appellant's attorney to proffer answers to questions asked by appellant's attorney to the appellant and to appellant's witness, thereby prejudicing the appellant and denying him a fair trial."

█ Reviewing the record on appeal, we note that the referee did prohibit defense counsel from proffering the answers to several questions put to the defense witnesses at the time the questions were asked. The proffered answers were later read into the record before the close of the hearing and were available for review and consideration by the referee in the making of the report. This action by the referee is justified by Evid.R. 611, which provides that the court shall control the mode and order of examination. Additionally, we note that any error in the timing of the proffered answers was waived for appellate purposes due to the failure of defense counsel to timely object to the court's action at the time the court restricted the defense from proffering the answers at the time the questions were asked of the witnesses. *State v. Morris* (1975), 42 Ohio St.2d 307, 71 O.O.2d 294, 329 N.E.2d 85, paragraph one of the syllabus.

The first assignment of error is overruled.

## II

"The time lapse between the hearing which took place June 8, 1992 and June 17, 1992, and the report of the referee, which was rendered on July 7, 1993, more than one year later, is contrary to the Supreme Court's General Rules of Superintendence for the Court of Common Pleas."

█ In this assignment, appellant argues that there was an excessive period of delay between the hearing by the referee and the issuance of a referee's report, relying on C.P.Sup.R. 6(A), which provides in pertinent part:

"All cases submitted for determination after a *court trial* shall be decided within 90 days from the date the case was submitted." (Emphasis added.)

Appellant's unsupported reliance on C.P.Sup.R. 6(A) is misplaced. The matter heard by the referee was not a "court trial"; thus, the ninety-day period mentioned in the rule is inapplicable to matters heard by a referee.

The second assignment of error is overruled.

### III

"Appellant's motion to modify child support should be granted as a result of the change in the financial circumstances of both appellant and appellee since the divorce."

### IV

"The findings and conclusions of the trial court as to the child support are invalid and incomplete because they fail to comply with the requirements set forth in R.C. 3113.215 and 3113.216."

These assignments of error will be discussed jointly. In his report, the referee stated the following:

"As might be expected, Defendant denies that any of Plaintiff's claims are accurate. He contends that he enjoys a modest lifestyle and essentially survives upon the good grace of his family. In April of 1992, Defendant commenced employment at an establishment known as the Kitchen which appears essentially to be a food service counter in the back of his father's market on East 131st Street. Defendant earns $600.00 per month from this endeavor. His present spouse is not employed outside the home. Defendant has one dependent child as issue of the second marriage.

"Defendant offered no documentary evidence in support of his stated income. He further declined to produce income tax returns for 1990 and 1991. His 1989 Federal Return shows wages of only $7,800.00 even though he was the sole owner and operator of the East 117th Street Food Mart during that time. The 1989 return shows no interest income despite bank statements showing accrued interest for the relevant year. Defendant was evasive when cross-examined concerning his actual income and his testimony is not trustworthy.

"Defendant bears the burden of proving that a substantial change in circumstances has occurred sufficient to warrant a recalculation of the parties' support obligations. Defendant has failed to sustain that burden. Defendant has elected to lead a lifestyle characterized by cash transactions, intra-family business dealings, concealed assets and undeclared income. Because of his numerous machinations and manipulation, Defendant's testimony lacks any credibility. The record contains no credible evidence to support a finding that a change in circumstances has occurred. Defendant's prohibition from transacting business in the form of food stamps arouses no sympathy. Defendant's conviction for trafficking in food stamps resulted from a misguided, but voluntary act on his part. He may not now plead the after-effects of his criminal enterprise to obtain a reduction in child support, particularly at the expense of the minor child.

"Defendant is either still earning the same amount of income that he was earning at the time of the parties' divorce or else he is voluntarily underemployed. In either instance, Defendant's Motion to Modify Child Support lacks merit and should be denied."

 This determination and recommendation by the referee concerning the alleged change in circumstances and imputation of income to the defendant/child support obligor, which was adopted by the trial court, may not be disturbed on appeal absent an abuse of discretion. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218; R.C. 3113.215(A)(5). In order to determine whether the court abused its discretion in denying the modification of child support, it is necessary to review, along with the remainder of the record, the parties' completed child support computation worksheets, which worksheets are required to be submitted pursuant to R.C. 3113.215(B)(1).[1] *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496. These worksheets were not submitted by the parties. Absent these worksheets, we are unable to determine with certainty whether the financial situation merits a modification of the child support.

Appellant's argument that the court failed to comply with the dictates of R.C. 3113.216 is without merit. R.C. 3113.216 governs the procedure for child support enforcement agency review of an administrative hearing with respect to child support orders. Reliance upon this statute is misplaced in the present case because the present case did not involve an agency review of an administrative hearing.

Accordingly, the third assignment of error is affirmed, and the fourth assignment of error is affirmed in part and overruled in part. On the basis of these determinations, the case is reversed in part and remanded for a new evidentiary hearing on the modification of child support, with such hearing to include the submission of completed child support computation worksheets by the parties.

## V

"The trial court has improperly placed the burden of proof in this case on the appellant."

 In this assignment, appellant argues in rambling and disjointed fashion that the court switched the burden of proof in regard to the alleged change of circumstances surrounding the modification of child support by permitting the

---

1. R.C. 3113.215(B)(1) requires these worksheets "[i]n any action in which a child support order is issued or modified under Chapter 3115, or section 2151.23, 2151.36, 2151.49, 3105.18, 3105.21, 3109.05, 3111.13, 3113.04, 3113.07, 3113.216, or 3113.31 of the Revised Code, in any other proceeding in which the court determines the amount of child support that will be ordered to be paid pursuant to a child support order[.]"

plaintiff-appellee to testify, without independent corroboration, as to the alleged lack of authenticity of certain signatures on some financial documents involving the defendant, his wife, his brother and his father, thereby placing the burden of disputing these allegations on the defendant-appellant. Reviewing the referee's report, we note that the court made no mention of the alleged irregularities in the signing of the various documents, thereby not relying on this testimony in the making of the report. Having failed to utilize this testimony in the making of the report, it cannot be demonstrated that the court somehow shifted the burden of proof on the ultimate issue of whether there were changed circumstances present. Further, we do not discern any shifting of the burden of proof by the trial court on the issue of a change in circumstances.

The fifth assignment of error is overruled.

## VI

"The trial court's findings are flawed because it relied on testimony offered by the appellee that bordered on ludicrous."

In this assignment, appellant argues, again in a rambling and disjointed manner, that the judgment of the court is apparently against the manifest weight of the evidence. Contrary to the assertions of the appellant, we conclude that the court, in assessing the credibility of the witnesses and the weight to be given the evidence, had a measure of competent evidence upon which to support its judgment. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

The sixth assignment of error is overruled.

## VII

"The court erred when it found that appellant sold his business for $100,000.00 when the court adopted the report of the referee who improperly placed too much reliance on the testimony of George Penfield, a witness for appellee."

The trial court, which assesses the credibility of the witnesses before it and determines the weight to be given the evidence, had before it testimony and evidence that the store was to sell for $100,000, as evidenced by the contemporaneous note made by Penfield, who drafted the purchase agreement and saw the parties to the sale with a bag full of cash in his office on the date the property transferred. The court was free to accept this evidence and discount the testimony of the defendant and Tayeh. *C.E. Morris Co., supra.*

The seventh assignment of error is overruled.

Judgment affirmed in part and reversed and remanded in part.

*Judgment accordingly.*

Nugent and Porter, JJ., concur.